United States District Court
Southern District of Texas

**ENTERED**

April 08, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JANE DOE (CS), | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 2:25-CV-00189 |
| | § | |
| SALESFORCE, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## ORDER

Pending before this Court is Defendant's Motion to Stay Proceedings Pursuant to 18 U.S.C. §§ 1595(b) (Doc. No. 24). Defendant Salesforce, Inc. ("Salesforce") requests this Court to stay this entire proceeding due to ongoing criminal proceedings across the country in *United States v. Lacey*, No. 2:18-CR-00422 (D. Ariz.). Plaintiff Jane Doe, CS ("Plaintiff") filed a Response. (Doc. No. 27). The Court is also in receipt of all replies and notices of supplemental authority. (Doc. Nos. 26, 28, 30). After close review of the pleadings and the relevant legal standard, the Court finds that 18 U.S.C. § 1595(b) requires this Court to stay the entire proceeding until a final adjudication is reached in *United States v. Lacey*, No. 2:18-CR-00422 (D. Ariz.).

### I.    Factual Background

This case was brought by an alleged victim of an extensive online sex trafficking scheme, facilitated by the communication pages on Backpage.com. (Doc. No. 7). As early as 2008, Backpage.com was identified by the United States Government as a source of a widespread sex trafficking network. (*Id.* at ¶ 57). The United States Senate published a Subcommittee Report that announced that Backpage.com "generated 93.4% of its average weekly paid ad revenue from adult ads" and "knew of, and facilitated, illegal activity taking place on its website." (*Id.* at ¶ 71, 86).

The Complaint alleges that "Backpage.com was not like Craigslist or other marketing platforms," but rather it "existed to connect illegal sex buyers with the criminals who compelled [Plaintiff] and others to submit to commercial sex." (*Id.* at ¶ 74). The Complaint alleges that this online network was further facilitated by the ongoing services of Defendant Salesforce, Inc., a technology company that partnered with Backpage.com to improve the website. (*Id.* at ¶¶ 91–144). The Complaint also alleges that Salesforce had knowledge that Backpage.com was predominantly used by online sex traffickers and continued to provide its own advanced software that improved the website and added features to expand marketing campaigns to boost revenue. (*Id.*) ("Backpage's use of Salesforce's technology enabled its transformation from a relatively small, local website into the world's largest and most notorious hub for sex and sex trafficking").

After allegedly suffering from years of illegal sex trafficking facilitated on Backpage.com, the Plaintiff sued Salesforce under the Trafficking Victims Protection Reauthorization Act. (*Id.* at ¶¶ 156–89). Salesforce filed this Motion to invoke the mandatory stay during the pendency of an ongoing criminal proceeding for a related case under the stay provision of the Trafficking Victims Protection Reauthorization Act. *See* 18 U.S.C. § 1595(b).

## II.    Legal Standard

The Trafficking Victims Protection Reauthorization Act ("TVPRA") provides a civil cause of action to sex trafficking victims against "the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA])." 18 U.S.C. § 1595(a). Recognizing the sensitivity of these civil lawsuits, the TVPRA also states that "any civil action . . . shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim." *Id.* at § 1595(b)(1).

2

A "'criminal action' includes investigation and prosecution and is pending until final adjudication in the trial court." *Id.* at § 1595(b)(2). The stay is a "mandatory obligation" for the entire action if "(1) a criminal action or investigation is pending; (2) the criminal action arises "out of the same occurrence" as the civil action; and (3) the plaintiff in the civil action is the victim of an occurrence that is the same in the civil and criminal proceedings." *Doe 1-10 v. Fitzgerald*, 102 F.4th 1089, 1098 (9th Cir. 2024).

### III.   Analysis

Salesforce requests this Court to enforce the mandatory stay provision in 18 U.S.C. § 1595(b)(1). Salesforce argues that the pending criminal action involving the same sex trafficking scheme makes this stay mandatory under the statute. The Plaintiff opposes the stay and argues that Backpage.com and its officials—not Salesforce—are involved in the criminal action and thus, the Court should not stay this civil case against Salesforce. The Court separately addresses each element of the § 1595(b) stay provision.

#### A. Salesforce has demonstrated that the federal criminal action remains pending.

The Court must determine whether *United States v. Lacey*, No. 2:18-CR-00422 (D. Ariz.) is considered pending under the definition provided in § 1595(b)(2). Under § 1595(b)(2), a criminal action "includes investigation and prosecution and is pending until final adjudication in the trial court." 18 U.S.C. § 1595(b)(2). The Court finds that Salesforce only showed that *United States v. Lacey* meets the definition.

Salesforce listed *United States v. Lacey*, No. 2:18-CR-00422 (D. Ariz.) as the pending criminal action that triggers the mandatory stay. This criminal action was brought against Michael Lacey, one of the founders of Backpage.com, for his alleged involvement in the online sex trafficking scheme. The Superseding Indictment describes the details of how Backpage.com

3

facilitated the online scheme, including the sale of advertisements to human traffickers. *Lacey*, No. 2:18-CR-00422 (Doc. No. 230 at ¶¶ 33–34). In 2023, the government brought the case to trial, but the district court ordered a mistrial. (Doc. No. 228-1 at App. 40). In 2024, the government filed a notice of their intent to retry Lacey on all 84 counts against him. (*Id.*). Lacey is the last of seven co-defendants to reach final adjudication and continues to await a new trial date. *See, e.g.*, (*Id.* at App. 45–47 (discussing Lacey's pretrial bail conditions)). Under the plain text of 18 U.S.C. § 1595(b)(2), this criminal action is still pending, and no final adjudication has been reached. This case satisfies the first element of the mandatory stay provision.

## B. The *Lacey* criminal action "arises out of the same occurrence" as this case.

Having determined that the criminal action in *United States v. Lacey*, No. 2:18-CR-00422 (D. Ariz.) is pending for the purposes of § 1595(b), the Court now turns to whether the *Lacey* action "arises out of the same occurrence" of the claims here. The mandatory stay in § 1595(b)(1) only applies if the pending criminal action "aris[es] out of the same occurrence in which the claimant is the victim." 18 U.S.C. § 1595(b)(1). The statutory requirement of the "same occurrence" does require more than inferences from similar-sounding allegations. *Doe v. Aylo Global Entertainment Inc.*, 2023 WL 8884400, at *2 (C.D. Ca. Nov. 29, 2023). "A clear connection" between the events alleged in the indictment and the civil complaint is sufficient to establish that the cases arise out of the same occurrence. *Fitzgerald*, 102 F.4th at 1100. Nevertheless, this element does not require that the pending criminal action and the civil case have the same defendants. *Id.* at 1099 (holding that because "§ 1595(b)(1) refers only to the identity of victims, not of perpetrators," there is no requirement that the defendants in the cases must be the same).

4

The *Lacey* Superseding Indictment ("Indictment") details the investigation into Backpage.com, as well as the seven co-defendants (including Michael Lacey, one of the founders of Backpage.com). *See generally Lacey*, No. 2:18-CR-00422 (Doc. No. 230). The Indictment alleges that Lacey was aware that the "vast majority of the 'adult' and 'escort' ads appearing on Backpage were actually ads for prostitution" and "took steps to intentionally facilitation that illegal activity. *Id.* at 3. Lacey and the other defendants allegedly contributed to this scheme by "creating free ads for prostitutes in an attempt to secure future advertising revenues from them . . ., entering into formal business arrangements with known prostitution services and websites in an attempt to increase the volume of prostitution advertisements being posted on Backpage . . ., and sanitizing ads by editing them—specifically, removing terms and pictures that were particularly indicative of prostitution and then publishing a revised version of the ad . . . ." *Id.* at 9. The Indictment provides "select victim summaries" that describe the effects of the Backpage.com operation on sex trafficking victims. *Id.* at 40–44. The Indictment charges Lacey and the other defendants with conspiracy, violations of the Travel Act by facilitating prostitution, concealment of money laundering, and international promotion and concealment of money laundering. *See generally id.*

In this case, the Complaint outlines the details of the Backpage.com scheme. The Complaint alleges that the Plaintiff was "posted on Backpage.com for illegal commercial sex for money" and was trafficked in motels in Florida and Georgia. (Doc. No. 7 at ¶ 147–48). The Complaint alleges that "Salesforce was paid for the software and technology it provided to Backpage that enabled Backpage to grow its sex business." (*Id.* at ¶160). Specifically, the Complaint alleges that through "Salesforce's help in the form of software, marketing technology, and operational support, Backpage was able to collect detailed, in-depth customer data and use the

data to streamline communications and overall business practices to operate more efficiently and improve profitability and outreach." (*Id.* at ¶ 119).

The root of the pending criminal action and this case are the same: Backpage.com generated revenue from illegal sex trafficking advertisements, and the Backpage.com interface harmed victims of sex trafficking. The only difference is that the *Lacey* action indicted Michael Lacey, and this civil action is against Salesforce. While the Plaintiff argues that this difference is dispositive in order to deny the stay, the "same occurrence" test does not require identical defendants. *Fitzgerald*, 102 F.4th at 1100 (holding that the defendants do not have to be the same to invoke the § 1595(b) stay because indictments are within the government's sole discretion). Although the criminal action solely focuses on Backpage.com and its employees, there is a "clear connection" between the advertising scheme described in the *Lacey* Indictment and the advertising scheme described in the live Complaint. The Court holds that the *Lacey* criminal action and this case "arise out of the same occurrence" for the purposes of § 1595(b).

## C. The Plaintiff is an alleged victim of the same advertising scheme.

Lastly, the Court must address whether the Plaintiff is a victim of the Backpage.com advertisement scheme. Section 1595(b) requires that a civil action must be stayed "during the pendency of any criminal action arising out of the same occurrence *in which the claimant is the victim.*" 18 U.S.C. § 1595(b)(1) (emphasis added). Throughout the Complaint, the Plaintiff alleges that she was a victim of the Backpage.com advertisement scheme, which promoted advertisements for sex trafficking. *See generally* (Doc. No. 7). Specifically, she alleges that Salesforce violated the Trafficking Victims Protection Reauthorization Act by participating in its "continuous business relationship" with Backpage that "had many players, hundreds of communications and exchanges of information, and a level of familiarity that were far beyond typical 'technical support.'" (*Id.* at

¶ 166). Further, she alleges that "this relationship flourished during a time in which Backpage was regularly making headlines for facilitating illegal sex trafficking." (*Id.*). The Complaint alleges that the business relationship between Salesforce and Backpage was "a direct, producing, and proximate cause of the injuries and damages to [Plaintiff]." (*Id.* at ¶ 189). These allegations are sufficient to show that the Plaintiff is an alleged victim of the same occurrence alleged in the *Lacey* Indictment for the purpose of the mandatory stay under § 1595(b).

Under the plain text of the statute, the pendency of the Michael Lacey's new trial, the allegations listed in the *Lacey* Indictment, and the allegations on the fact of the Complaint in this action, this Court must impose a stay in this civil proceeding until the *Lacey* action reaches final adjudication. The Court notes that while not dispositive, this Court and other district courts across the country have imposed the mandatory stay in similar TVPRA cases filed against Salesforce. *See, e.g., A.B. v. Salesforce, Inc.*, No. 4:20-CV-01254 (S.D. Tex. Oct. 28, 2025); *S.M.A. v. Salesforce, Inc.*, No. 3:23-CV-0915 (N.D. Tex. Oct. 21, 2025); *A.S. Salesforce, Inc.*, No. 3:23-CV-1039 (N.D. Tex. Oct. 21, 2025) (Doc. No. 179); *I.H. v. Salesforce, Inc.*, No. 8:24-CV-01678 (M.D. Fl. Dec. 1, 2025) (Doc. No. 282); *G.G. v. Salesforce.com, Inc.*, No. 20-C-2335, 2026 WL 663407 (N.D. Ill. Mar. 10, 2026).

## IV.    CONCLUSION

For the foregoing reasons, the Defendant's Motion to Stay Proceedings (Doc. No. 24) is **GRANTED**. It is further **ORDERED** that this cause of action is administratively (statistically) closed. The parties may move to reinstate the case on the court's active docket at such time final adjudication is reached in *United States v. Lacey*, No. 2:18-CR-00422 (D. Ariz.). A copy of this Order shall be attached as an exhibit to any motion to reinstate.

7

All other pending motions are denied without prejudice, and the motions may be refiled at the time this case is reopened.

It is so ordered.

Signed on this the _____ 8th day of April 2026.

Andrew S. Hanen
United States District Judge

8